

**SIGNED this 24th day of April, 2007.**

_____
**FRANK R. MONROE
UNITED STATES BANKRUPTCY JUDGE**
_____

UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| IN RE: | X | |
| CENTURY CARE OF AMERICA, INC. | X | CASE NO. 04-10801-FRM |
| | X | CHAPTER 11 |
| DEBTOR | X | |
| JOSEPH M. HILL, TRUSTEE OF THE | X | |
| DISTRIBUTION TRUST OF CENTURY | X | |
| CARE OF AMERICA, INC. | X | |
| Plaintiff | X | |
| v. | X | ADVERSARY NO. 06-1174-FRM |
| ALPHONSO R. JACKSON, | X | |
| SECRETARY OF THE UNITED | X | |
| STATES DEPARTMENT OF HOUSING | X | |
| AND URBAN DEVELOPMENT | X | |
| Defendant | X | |

MEMORANDUM OPINION

The Court has reviewed the above-referenced Motion filed by Joseph M. Hill, the Distribution Trustee (the "Trustee") in this adversary proceeding. The Trustee requests reconsideration of the granting of the Housing and Urban Development's ("HUD") summary

1

judgment on two grounds 1) that the Court erred in granting HUD's Motion for Summary Judgment and denying the Trustee's Motion for Summary Judgment based upon an incorrect finding of fact that the funds originally borrowed by the Governmental and Educational Assistance Corporation ("GEAC") entities from Century Care of America, Inc. ("CCA") had been repaid on September 27, 2002 and that CCA then made a new loan to the GEAC entities on the same date; and 2) that the dismissal of this case based upon HUD's Motion for Summary Judgment gave no regard to the fact that sums in addition to the initial $707,414.00 for operating deficits and non-critical repairs were lent by CCA to GEAC.

Summary Judgment Evidence

CCA, the Debtor, sold several nursing centers to GEAC. To purchase these centers, GEAC obtained financing through revenue bonds. HUD partially guaranteed the bonds. There were five entities sold ("GEAC entities"). HUD's guaranty agreements required that the GEAC entities establish escrow accounts to cover their potential future operating deficits and non-critical repair requirements. HUD required that such funds be placed in escrow with a third party beneficiary which was Malone Mortgage. CCA provided a total of $701,414.00 cash in five separate escrow accounts to fund any operating deficits or non-critical repairs. After 18 months in escrow, any remaining funds were to be returned to CCA based on the Commitments to Insure entered into in connection with this transaction. The Addendum to Sales Agreement also referenced "cash or letters of credit" to fund the escrows required by HUD. Although the documents referenced the funds be escrowed once as "proceeds at closing" and another as "cash or letters of credit", after the closing each of the GEAC entities executed promissory notes to CCA in connection with the funds in escrow. The GEAC entities also executed promissory notes to Century Care, Inc., (the manager

2

and operator of CCA's nursing centers)("CCI) for additional operating capital. These Notes are currently owned and held by CCA.

On or about September 26, 2002 Paul Gray approved the wire transfer of the escrowed funds of $701,414 back to CCA. Trustee's MSJ Exhibit 49. These funds were wired to CCA's account by Malone Mortgage on September 27, 2002. Trustee's MSJ Exhibit 50. The funds were then wired by CCA into four of the GEAC entities' operating accounts ("Surplus Cash Accounts") in particular and differing amounts. Those funds were then wired by the four entities into the Ebony Lake GEAC Surplus Cash Account.

CCA later filed bankruptcy and pursuant to its confirmed plan, Joseph Hill was appointed as the Distribution Trustee of the Distribution Trust created at confirmation. The Trustee commenced this Complaint to collect the Notes executed by the GEAC entities and surplus cash escrowed for the benefit of GEAC that are now in GEAC's accounts. The Trustee has sued HUD to obtain an order requiring HUD to authorize the release of the $701,414 funds in question on several theories: breach of contract and specific performance of the contract, and then a declaratory judgment that HUD wrongfully withheld its consent and should allow turnover of the monies.

The Argument

The parties submitted dueling summary judgment motions which were heard by this Court on February 7, 2007. The parties agreed to the pleadings, depositions, documents and other evidence introduced at this hearing which allowed the Court to make its ruling. The Trustee now argues that the Court was incorrect in its findings of fact as it failed to give proper deference to the intent CCA and GEAC had in directing the various transfers of the $701,414 on September 27, 2002. However, the Trustee did not introduce any evidence at the summary judgment hearing with regard

3

to CCA or GEAC's intent. The Trustee merely relied on his own conclusory observations of what the documents submitted showed CCA and GEAC's intent to be and desired the Court to adopt his interpretation.

The uncontroverted evidence presented at the summary judgment hearing clearly showed that the funds held in escrow with Malone Mortgage were repaid to CCA on September 27, 2002 when Malone Mortgage transferred these funds by wire transfer to CCA's account; then CCA on the same day advanced those funds by wire transfer directly to certain of the GEAC entities' Surplus Cash Accounts; and again on the same day these funds were all consolidated, for the most part, in one of the GEAC entities' (Ebony Lake) Surplus Cash Account. Further, CCA listed only loans made to the GEAC entities in its bankruptcy Schedules; it did not schedule any cash as being held by the GEAC entities for the benefit of CCA.

In his first point of error, the Trustee argues that these wire transactions were actually contemporaneous wire transfers of funds to CCA and then to the GEAC entities. Further, the Trustee urges that there was no evidence that this series of transfers resulted in a "new loan" by CCA to the GEAC entities. The Trustee claims that the only evidence presented to the Court which explains how the loans made by CCA to fund the operating deficit accounts would be repaid to CCA are the Notes represented by Trustee's MSJ Exhibit 57 and that the provisions in the Notes required that the GEAC entities repay the Notes from their Surplus Cash Accounts. The Trustee urges that based upon the evidence, it is clear that the intent of the GEAC entities and CCA transferring the funds first to CCA's account and then, in the same day, moving the funds to the GEAC entities' Surplus Cash Accounts was not to repay CCA and then consummate a new loan by CCA but to place the funds into the Surplus Cash Accounts so that the funds could then be paid to CCA out of the

4

Surplus Cash Accounts in accordance with the terms of repayment on the Notes. He also urges that this would also allow such transfer without violating the terms of the escrow agreement between Malone Mortgage and the GEAC entities which required the funds be paid to the GEAC entities. However, most, if not all, the funds ended up in only one GEAC operating account being Ebony Lake.

The Trustee is asking this Court to conclude that his take on the evidence is correct even though it requires the Court to determine the parties' intent when there was no evidence in the summary judgment record of any one's intent. The Court rendered its ruling orally on the record based on the pleadings, depositions, answers to interrogatories, admissions and affidavits. Fed. R. Civ. P. 56(c). The Court reviewed this summary judgment in light of *Hawking v. Ford Motor Credit, Co.,* 210 F.3d 540 (5th Cir. 2000). The court in *Hawking* states:

> Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. All inferences drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. If, however, the evidence submitted by the non-moving party is merely colorable or is not significantly probative, summary judgment may be granted because "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine' issue for trial. Finally, once a motion for summary judgment has been made and supported, the party opposing the motion "may not rest upon the mere allegations or denials of the adverse party's pleading, but. . must set forth <u>specific</u> facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." (Citations omitted).

*Id.* at 545 (Emphasis added).

Both parties relied upon the email message (Trustee's MSJ Exhibit 49) that indicates Paul Gray authorized the wire transfer of the $701,414 from Malone Mortgage to CCA and then provides wiring instructions for the funds from CCA to certain of the GEAC entities and then again the transfer from these GEAC entities into one GEAC entity account-Ebony Lake. At the hearing, the

5

Trustee failed to provide any controverting evidence to that email message or any evidence of Mr. Gray's intention with regard to this transaction. The Trustee wants the Court to adopt his view of Mr Gray's intention in authorizing the release of funds to CCA combined with the transfers back to the GEAC entities without there being any evidence in the record as to his intention. There is no evidence to support the Trustee's conclusory argument that this was a contemporaneous transaction with the sole purpose of transferring the funds into the GEAC entities' Surplus Cash Accounts so that they could then be used to repay CCA its loans as required by the Notes. While that is clearly one interpretation of what happened, there was simply no evidence presented by the Trustee upon which the Court can rely to adopt the Trustee's view of CCA and GEAC's intention. The Trustee had an opportunity to introduce evidence on this point and evidently chose not to do so. The evidence that was presented is not ambiguous. It is easy to trace the flow of the funds. The escrow funds were returned to CCA. What CCA did with them thereafter is largely irrelevant without evidence to support the Trustee's view. Having returned the escrowed funds once under the relevant documents, that obligation has been fulfilled.

In its point of error 2 the Trustee complains that the Court did not address the additional funds that were lent to the GEAC entities in its summary judgment ruling, and therefore the adversary proceeding should not have been dismissed. These additional loans were actually made by Century Care, Inc., the manager and operator of CCA's nursing centers. (Trustee MSJ Exhibits 23-27). These loans were then assigned by CCI to CCA. The summary judgment evidence addressed these particular loans. In its ruling the Court determined that the Regulatory Agreements executed in connection with this transaction (Trustee's MSJ Exhibits 17-20) gave HUD veto power over the release of funds held in the residual receipts accounts, i.e. Surplus Cash Accounts, and that

6

nothing in the Agreements required HUD to give its consent under the circumstances presented to this Court.

The Trustee's grounds for reconsideration provide no grounds upon which this Court could or should entertain reconsideration of its ruling. There were no errors in the Court's ruling based on the evidence submitted. An Order of evendate will be entered.

###